**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-832-WJM-KLM

WADE GAGNON,
VALERIE VAN TASSEL, and
DAVID F. WILLIAMS, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

MERIT ENERGY COMPANY, LLC, formerly known as Merit Energy Company,

      Defendant.

---

**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

      Wade Gagnon, Valerie Van Tassel, and David F. Williams (collectively,

"Plaintiffs") bring this action on behalf of themselves and all others similarly situated.

Before the Court is Plaintiffs' Motion for Class Certification ("Certification Motion"), filed

on April 6, 2015.  (ECF No. 54.)  On August 10, 2015, Merit Energy Company

("Defendant" or "Merit") filed its Response to Plaintiffs' Certification Motion.  (ECF No.

91.)  Plaintiffs' Reply was filed on October 14, 2015.  (ECF No. 97.)  For the reasons

explained below, the Court denies the Certification Motion.

## I.  BACKGROUND

      Plaintiffs and their proposed Class are "royalty owners" who own interests in

wells that produce gas in Colorado and Oklahoma.  (ECF No. 21 at 6–7.)  Subject to

leases and contractual agreements, Defendant extracts, conditions, and markets the

gas from the wells.  (*Id.* at 7.)  After leaving the well, the gas may undergo a variety of

services to change its condition, such as gathering, compression, dehydration, treating/blending, or processing (collectively, "GCDTP"). (*See id.* at 15.)  In exchange for the right to extract and sell the minerals, Defendant agrees to pay a portion of its revenue to the royalty owners. (*Id.* at 7.)

Plaintiffs initiated this action on March 21, 2014 by filing a class action Complaint against Defendant.  (ECF No. 1.)  On May 13, 2014, Plaintiffs filed a First Amended Class Action Complaint.  (ECF No. 21.)  That Amended Complaint alleges that Defendant breached leases and contracts by failing to properly pay royalties on gas production to Plaintiffs and members of the proposed Class.  (ECF No. 21 at 16.) Specifically, Plaintiffs contend that Defendant was obligated to pay royalties based on the "gross" value of the gas.  (*Id.*)  They allege, however, that Defendant paid Plaintiffs royalties based on the net value of the gas, which was calculated by deducting the cost of GCDTP services from the gross value.  (*Id.* at 15–16.)

## II.  ANALYSIS

### A.    Legal Standard

As the parties seeking class certification, Plaintiffs must first demonstrate that all four prerequisites of Federal Rule of Civil Procedure 23(a) are clearly met.  *Shook v. El Paso Cnty.*, 386 F.3d 963, 971 (10th Cir. 2004); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013).  These threshold elements consist of the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

If Plaintiffs prove they have met these threshold requirements, they must then

demonstrate that the action falls within one of the three categories set forth in Rule

23(b).  *Shook*, 386 F.3d at 971.  Here, Plaintiffs seek certification pursuant to Rule

23(b)(3), which requires a showing that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating

the controversy."

The party seeking to certify a class bears the strict burden of proving the

requirements of Rule 23.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

Rule 23 does not set forth a "mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011).  Instead, a party seeking to certify a class "must

affirmatively demonstrate his compliance with the Rule."  *Id.*  When deciding whether

the proposed class meets the requirements of Rule 23, the Court accepts the plaintiffs'

substantive allegations as true, though it need not blindly rely on conclusory allegations

and may consider the legal and factual issues which the complaint presents.  *Shook*,

386 F.3d at 968; *see also Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009).

The Court should not pass judgment on the merits of the case, but must conduct a

"rigorous analysis" to ensure that the requirements of Rule 23 are met.  *D.G. ex rel.*

*Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

The decision whether to grant or deny class certification "involves intensely

practical considerations and therefore belongs within the discretion of the trial court."

3

*Tabor*, 703 F.3d. at 1227.

## B.     Proposed Class

In their Certification Motion, Plaintiffs propose the following Class definition:

> All royalty owners in Oklahoma wells and all royalty owners and overriding royalty owners in Moffat, Washington, and Rio Blanco County, Colorado [w]ells operated by Merit Energy and producing gas or gas constituents (such as residue gas, NGLs, or helium) at any time from January 1, 1999 to the date class notice is provided to the certified class.
>
> The defined class excludes: (1) Indian tribes; (2) the United States of America; (3) any publically traded company or entity that produces, gathers or processes [g]as along with along with the affiliated entities of such publically traded entities including without limitation all subsidiaries, partnerships, limited liability companies, trusts, limited partnerships and other entities owned or controlled by such publically traded company or entity; (4) Merit Energy, its affiliates, its predecessors-in-interest, and their respective employees, officers, and directors; (7) [sic] royalty and overriding royalty owners to the extent that in the lease creating the royalty interest or the written documents creating the overriding royalty interest expressly authorized all of the deductions for [g]as; (8) [sic] royalty owners in leases identified in *Foster v. Merit Energy*, Case No. 5:10-cv-00758-F, Doc. 53-1, Clause Nos. 202(d), 202(g), 215, 247, 296, 302, 303, 307, 310, 319, 323, 325, and 327; (9) [sic] "same as fed" leases; (10) [sic] plaintiffs suing under the current petition in *Chieftain Royalty Company, et al v. Merit Energy Company*, Case No. CJ-2012-68, in the District Court of Caddo County, Oklahoma; (11) [sic] royalty owners under the wells purchased in 2014 by Merit Energy from either QEP or OXY USA Inc.; and, (12) [sic] State of Colorado or Oklahoma entities.[1]

---

[1] The Certification misnumbers the exclusions and contains omits exclusions numbered "5" and "6." (*See* ECF No. 54 at 3.)  In its Reply, Plaintiffs present a new proposed Class definition which corrects the prior definition's numbering errors and removes the "same as fed" exclusion because Merit's discovery responses verified that there are no such leases in this case.  (ECF No. 97-2.)  These modifications have no impact on the Court's decision regarding

(ECF No. 54 at 3.)

**C.   Rule 23(a)**

The Court's first task is to ensure that the Federal Rule of Civil Procedure 23(a) requirements are satisfied as to the proposed Class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  The Court will address these considerations in turn.

1.   <u>Numerosity</u>

Plaintiffs contend that Merit pays thousands of royalty owners who would qualify as members of the proposed Class.  (ECF No. 54 at 3.)  In his affidavit, the Corporate Counsel for Defendant acknowledges that Defendant "pays royalties in Oklahoma and Colorado under approximately 3,497 leases which are likely to be included in Plaintiffs' definition of the proposed class."  (ECF No. 91-7 at 4.)  Given that thousands of Class members would make joinder impracticable, and given Defendants' non-opposition on this point, the Court finds that the numerosity requirement is satisfied.

2.   <u>Commonality</u>

Rule 23(a) requires that there be questions of law or fact common to the class. Plaintiffs allege that there are at least three questions common to the entire class.

---

certification.  Therefore, the reasoning in this Order applies to both the Plaintiffs' definition from the Certification Motion and Plaintiffs' modified definition from the Reply.  The Court will use Plaintiffs' numbering of exclusions from the Certification Motion.

(ECF No 54 at 4).  First, do a number of leases within the Class contain express language authorizing the lessee to deduct GCDTP costs or does the Implied Covenant to Market apply?  (*See id.*)  Second, at what point is the gas in marketable condition?  (*Id.* at 4, 10.)  And third, are class-wide damages appropriate?  (*Id.* at 5, 10.)

The Supreme Court has held that common questions alone are not sufficient to satisfy Rule 23(a)'s commonality requirement.  *Wal-Mart*, 131 S. Ct. at 2551.  Instead, the Plaintiffs must demonstrate that a classwide proceeding would generate "common answers" to those questions.  *Id.*  If the answers are common, the Court will be able to resolve each of the Class' claims "in one stroke."  *Id.*

Framed differently, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id.* (internal quotation marks omitted). Plaintiffs contend that each member of the proposed Class has suffered the same injury, that is, they were paid royalties based on the net value of the gas, rather than the gross value.  (ECF No. 54 at 11.)  Therefore, in order to satisfy the commonality requirement, the Plaintiffs must "affirmatively demonstrate" that the proposed Class members were entitled to royalties based on the gross value of the gas.  *See Wal-Mart*, 131 S. Ct. at 2551.

        a.    *Should Proposed Class Members' Royalties Be Based on "Gross" Value?*

Each lease agreement between the proposed Class members and Defendant contains a "royalty clause".  (*See* ECF No. 91-7.)  Those clauses outline the contracted amount of each individual's royalty payment.  (*See id.*)  In *Chieftain Royalty Co. v. XTO Energy Inc.*, 528 F. App'x 938, 939 (10th Cir. 2013), the Tenth Circuit reviewed an order

6

certifying a class of Oklahoma royalty owners.  The court held that, in order to determine whether commonality is satisfied, a district court must perform a "substantive analysis" of the language in the various lease terms.  *Id.* at 942–43.  Therefore, the Court must review the various royalty clauses in order to determine if their language entitles the proposed Class members to payment of royalties based on gross value.

Defendant has provided the language of all the royalty clauses that appear in the leases of the proposed Class members.  (ECF No. 91-7.)  Defendant also assigns a number to each different clause.  (*Id.*)  Some of these royalty clauses—such as Clause Number 54—explicitly state that the royalty owner is to be paid based on the "gross proceeds" received by Defendant.  (*Id.* at 20.)  Other clauses provide that royalties are to be based on gross value only in certain circumstances.  (*Id.* at 11.)  For example, Clause Number 24—appearing in 185 different lease agreements for the proposed Class—provides that royalties are based on gross value only if the gas is from a "well where gas only is found," as opposed to an oil well.  (*Id.*)  Because of this conditional language, more information is required to determine whether royalty owners whose leases contain Clause Number 24 are entitled to be paid based on gross value.  First, the Court would need to know which of Defendant's wells produce "gas only."  Second, the Court would need to know which wells are associated with leases containing Royalty Clause Number 24.  Plaintiffs does not provide the Court with this level of information for Clause Number 24, nor does it provide sufficient information for any of the other royalty clauses containing conditional language.  Therefore, the Court cannot be sure whether many of the proposed Class members are explicitly entitled to be paid in gross.

7

Nevertheless, Plaintiffs argue that they should be paid in gross due to an "Implied Covenant to Market" (the "ICM") that applies to the proposed Class members' leases.[2]  (*See* ECF No. 54.)  The ICM "obligates the lessee to incur those post-production costs necessary to place gas in a condition acceptable for market."  *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 902 (Colo. 2001).  This means that—under the ICM—lessees, like Defendant, are obligated to bear the full value of GCDTP costs if those costs are needed to make the gas "marketable."

The ICM itself does not define what is meant by "marketable."  Plaintiffs assume that the question as to when gas becomes marketable will have a common answer for all members of the proposed Class.  (ECF No. 54 at 11.)  Additionally, Plaintiffs' expert contends that no gas is marketable at the wellhead before undergoing GCDTP services.  (*See* ECF No. 57-6 at 4.)  Under these assumptions, if the ICM applies to a lease, that lease entitles the proposed Class member to royalty payments based on the gross value of the gas.  Accordingly, each member of the proposed Class would have the same injury so long as they are either explicitly guaranteed payment based on gross value, or their leases are subject to the ICM.  However, the Court must also determine whether the ICM applies to those leases not specifically calling for royalty payment based on gross value.

---

[2] Plaintiffs refers to the ICM as the implied Marketable Condition Rule (the "MCR"). (ECF No. 54 at 1.)  Defendant and some relevant cases refer to this covenant as the ICM. (ECF No. 91 at 5.); *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 896 (Colo. 2001); *Mittelstaedt v. Santa Fe Minerals Inc.*, 924 P.2d 1203, (Okla. 1998)  The Tenth Circuit refers to this same covenant as the Implied Duty of Marketability (the "IDM").  *Chieftain*, 528 F. App'x at 940.  The Court will refer to this covenant as the ICM.

Under Colorado law,[3] the ICM applies to all leases that are "silent" with respect to the allocation of production (GCDTP) costs. *Rogers*, 29 P.3d at 903. The Colorado Supreme Court held that phrases such as "at the mouth of the well," "proceeds at the well," "market price," and "market value" are all silent with respect to the allocation of GCDTP costs. *Id.* at 897–98. Oklahoma law also recognizes a version of the ICM where lessees have a duty to bear the cost of bringing the product to marketable form. *Wood v. XTO Prod. Corp.*, 854 P.2d 880, 882–83 (Okla. 1992). Oklahoma's ICM applies in the absence of express language negating the covenant. *Foster v. Merit Energy Co.*, 282 F.R.D. 541, 559 (W.D. Okla. 2012).

If a royalty clause provides for payment of "net proceeds," it is no longer subject to the ICM. Under Colorado law, the term "net proceeds" is not silent as to allocation of GCDTP costs. *See Rogers*, 29 P.3d at 894, 903. This is because the net, or "net-back," method of calculating royalties involves the specific deduction of GCDTP costs before the payment of royalties, therefore allocating the costs to royalty owners. *Rogers*, 29 P.3d at 894. For the same reasons, the Court finds that the language "net proceeds" expressly negates the ICM under Oklahoma law, as well.

Nevertheless, some of the royalty clauses in the leases between Defendant and members of the proposed Class contain the term "net proceeds." (ECF 91-7). That includes Clause Numbers 29, 31, 33, 40, 49 (Foster Clause Number 11(a)), 86 (Foster Clause Number 320), 96, 98, 104, and 105. (*Id.*) Clause 104 is particularly noteworthy

---

[3] Both Plaintiffs and Defendant refer to Colorado and Oklahoma law. (ECF No. 54; ECF No. 91.) The Court will follow the parties' lead by referring to Colorado law when analyzing Colorado leases and Oklahoma law when analyzing Oklahoma leases.

because it is the royalty clause contained in the leases which provide royalty interests to named Plaintiffs Wade Gagnon and Valerie Van Tassel.  (ECF No. 91-7 at 38; ECF No. 91-16 at 2–5.)  Clause 104 is the only royalty clause which pertains to Gagnon and Van Tassel, because their other lease is excluded under Plaintiffs' Class definition due to the presence of Clause Number 56 (Foster Clause Number 247).  (ECF No. 91 at 25; ECF No. 91-17 at 2–5.)  Clause 104, like many of the other Royalty Clauses featured in the relevant leases, contains conditional language.  (ECF No. 91-7 at 38.)  It states that the lessor is to be paid a portion "of the net proceeds . . . received for gas sold from each well where gas only is found."  (*Id.*)  If the gas is not from a well in which "gas only" is found, the lessor is to be paid a portion "of the market value at the well."  (*Id.*)  If the wells in which Gagnon and Van Tassel own interest are not wells in which gas only is found, the ICM will apply to the lease as triggered by the phrase "market value at the well."  *See Rogers*, 29 P.3d at 897.  However, Plaintiffs have not demonstrated that the relevant well is not a well in which gas only is found.

In fact, Plaintiffs provide no detailed information about the well in which Gagnon and Van Tassel own interest, nor do they provide well-specific information about the other Class members' wells.  Based on the information provided, the Court cannot determine if the ICM should apply to several proposed Class members, including named Plaintiffs Gagnon and Van Tassel.  Therefore, Plaintiffs have not demonstrated that the proposed Class members are all to be paid in gross, and Plaintiffs have not demonstrated that the proposed Class members suffered the same injury.  The Court finds that Plaintiffs have not satisfied the commonality requirement of Rule 23(a), and, on those grounds, the Court declines to certify Plaintiffs' proposed Class.

Plaintiffs argue that any problematic leases do not cause a commonality issue because they have been excluded under the Class definition.  (ECF No. 97 at 7–8.) Exclusion 11 removes individuals from the Class definition who have leases relating to wells acquired by Defendant in 2014.  (ECF No. 54 at 3.)  Plaintiffs then list which clauses are removed from the class under this particular exclusion; however, that list does not contain problematic Clauses 49 and 86.  (*See* ECF No. 97 at 8 n.7.) Furthermore, Plaintiffs' list of excluded clauses *includes* Clause 104, which is discussed above.  (*Id.*)  Since the Court presumes that Plaintiffs Gagnon and Van Tassel did not wish to exclude themselves from the proposed Class, this list of excluded clauses must not be entirely accurate.

Additionally, Plaintiffs argue that certain problematic leases are excluded under Exclusion 7 which removes all individuals holding leases that "expressly authorized all of the deductions for Gas."  (ECF No. 54 at 3.)  This Exclusion itself does not define what it means to "expressly authorize all of the deductions for gas."  That definition is left to the Court's interpretation.  If the Court interpreted Exclusion 7 as referring to all royalty clauses with the term "net proceeds," such an interpretation would again exclude individuals whose lease contains Clause 104, including named Plaintiffs to this case.

Plaintiffs seem to suggest that Exclusion 7 is some sort of catch-all exclusion which would remove from the Class any individuals whose leases negate the ICM. (ECF No. 97 at 7.)  If that is the case, the Exclusion is conclusory and asks the Court to essentially define the Class for Plaintiffs by determining exactly which proposed Class members would violate commonality and then excluding them from the Class.  This is not the Court's responsibility.  Plaintiffs bear the strict burden of proving the

requirements of Rule 23.  *Trevizo*, 455 F.3d at 1162.  They cannot require the Court to complete this task for them.[4]

   b. *If the ICM Applies, At What Point Does Gas Become Marketable?*

  Even if the ICM were found to apply to the leases of all proposed Class members whose leases do not provide for royalty payment based on gross value, there is no guarantee that each Class member suffered the same injury.  In order for that to be the case, the ICM must provide that the Class members are to be paid based on gross value.  Whether or not this is true depends upon the point at which gas becomes marketable, because the ICM guarantees that the lessee will bear the cost of making gas marketable.  *Rogers*, 29 P.3d at 902.  Therefore, if gas must undergo GCDTP services to gain marketable status, Defendant would be required to bear those costs and be prohibited from deducting those costs from royalty payments.  That is to say, where marketability requires GCDTP services, the ICM requires that royalties are determined based on gross value.  However, if gas is considered marketable at the well—before undergoing GCDTP services—then those services are not required to make the gas marketable.  In that case, the ICM would allow Defendant to deduct GCDTP costs from royalties and pay the owners based on the net value.

  Plaintiffs' expert says that none of the raw gas in this case is at marketable condition at the wells.  (ECF No. 57-6 at 4.)  In order to be sold into the interstate pipeline market, he contends, the gas must be serviced in some way.  (*See id.* at 4–6.)

---

  [4] Plaintiffs' efforts to establish commonality might be simplified if the Class was defined through the affirmative inclusion of certain lease forms, rather than through a general definition with numerous exclusions.

On the other hand, Defendant's expert says that all of the gas is marketable at each step along the distribution chain, including at the wellhead.  (ECF No. 91-5 at 9–10.)  The Tenth Circuit, interpreting Oklahoma law, held that there is a possibility that gas could be in marketable condition at the well.  *Chieftain*, 528 F. App'x at 9403.  Plaintiffs embrace this "battle of the experts."  (ECF No. 97 at 1.)  They argue that, since both experts contend that the point of marketability is consistent for *all* members of the proposed Class, this presents a common question of fact or law, despite the experts' disagreement.  (*Id.* at 10.)  Plaintiffs believe that the question of marketability will produce a common class-wide answer, regardless of which expert's theory the Court adopts.  (*See id.*)

However, a common class-wide answer as to marketability is not a certainty.  Both Colorado and Oklahoma law recognize that determinations as to the marketability of gas are questions of fact.  *Rogers*, 29 P.3d at 906 ("The determination of whether gas is marketable is a question of fact . . . ."); *Mittelstaedt v. Santa Fe Minerals Inc.*, 924 P.2d 1203, 1214 (Okla. 1998) ("Treating marketability as a question of law ignores market realities.").  The Tenth Circuit has on two occasions held that, when district courts undertake to determine the point of marketability of gas from various wells, they should consider the extent to which such a factual determination affects commonality.  *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1219 (10th Cir. 2013); *Chieftain*, 528 F. App'x at 943.  Specifically, in interpreting Oklahoma law, the Tenth Circuit directed a district court to determine whether individual inquiries into the condition of gas from each well—as opposed to an overarching class-wide

13

analysis of marketability—might be necessary.  *Id*. at 943 n.4.  Thus, the Tenth Circuit

recognizes that the point of marketability is not necessarily consistent between all gas

produced at all wells.  *See Roderick*, 725 F.3d at 1219 ("[I]f gas is in marketable

condition at the mouth of 'Well A' but not 'Well B,' [defendant's] deductions likely would

be proper for Well A's royalty owners, but a breach . . . for Well B's royalty owners . . .

.").  Under Oklahoma law, gas could be marketable at the well or at some point

thereafter.  *See Chieftain*, 528 F. App'x at 943, n.4.  That specific point of marketability

depends upon the condition of the gas at each well, including, for example, the

presence or lack of nitrogen in the gas produced at the well.  (*See* ECF No. 57-6 at 6.)

Individualized analysis of the wells is necessary to determine the point of

marketability of gas from each well.  Therefore, it is possible—based on the facts—that

the members of the proposed Class were not all owed payment based on gross value.

If that is the case, different members of the proposed Class would not have suffered the

same injury and thus lack commonality.

One of Defendant's experts provides some analysis of individual wells, but the

information provided is not sufficient for the Court to determine the point of marketability

for each well.  (*See* ECF No. 91-9 at 5–12.)  Moreover, it is Plaintiffs' duty to

"affirmatively demonstrate" the existence of commonality and Plaintiffs do not provide

the necessary factual basis for such a demonstration in this case.  *See Wal-Mart*, 131

S. Ct. at 2551.  For this reason, in addition to those reasons provided in the previous

section, the Court finds that Plaintiffs have not satisfied the commonality requirement of

Rule 23(a), and declines to certify Plaintiffs' proposed Class.

3.    Typicality

Although the Court has found that the proposed Class fails to meet the commonality requirement of Rule 23(a), the Court will also discuss Defendant's argument that the proposed Class lacks typicality.  Specifically, Defendant argues that David F. Williams' claim is not typical of the claims of the proposed Class.  (ECF No. 91 at 23.)  Although Williams has some royalty interests through leasing agreements, he is primarily a "working interest" owner who gained most of his interests in Merit wells through "forced pooling" of his inherited mineral interests.  (*Id.*)

The proposed Class definition does not exclude individuals with "forced pooling" interests who have no lease agreements with Defendant whatsoever.  (ECF No. 54 at 3.)  Although Defendant analyzed this as a "typicality" issue specific to Plaintiff Williams, the Court notes that this is also a commonality issue pertaining to an unknown number of Class members who have interests through pooling rather than lease agreements. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 162 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").  The Court must decide whether proposed Class members with leases suffer the same injury as those without leases.  *See generally Wal-Mart*, 131 S. Ct. at 2551.

Defendant contends that royalty interests not subject to a lease are instead defined by 52 Okla. Stat. § 87.1(e).  (ECF No. 91 at 18.)  After an amendment to § 87.1(e) in 2012, royalty owners are deemed subject to the ICM if they elect "not to participate under a pooling order."  (*Id.*)  Because Plaintiff Williams and other possible Class members participated in pooling orders, Defendant claims that the ICM does not apply to those individual agreements.  (*Id.*)  Thus, those individuals would arguably lack

15

commonality with those proposed Class members to whom the ICM does apply.

Plaintiffs argue that Class members who do not have lease agreements suffer the "same injury" as those with leases, due to the unitization of the Class wells. (ECF No. 97 at 14.)  "Since all of the Class wells are unitized in this case, the unit provides [that] Merit, as the operator, owes a fiduciary duty to royalty owners to pay [the] royalty correctly whether they have a lease or an OCC Pooling Order or neither." (*Id.*) However, even if Plaintiffs are correct that Defendant owes all proposed Class members the same fiduciary duty, that does not mean that all proposed Class members suffered the same injury.  In the case that a Class member is subject to a pooling order, the language of that order would need to be reviewed in order to determine whether such royalty owners are to be paid in gross.  The Court has not been provided with the language of Plaintiff Williams' pooling order, let alone the pooling orders of all members of the proposed Class.  Therefore, Plaintiffs have not demonstrated to the Court that these proposed Class members suffer a common injury to those proposed Class members with leases.  For this reason—in addition to those reasons in the prior section on "Commonality"—the Court finds that the proposed Class should not be certified under Rule 23.

## D.    Modification of the Class Definition

This Court has recognized that it has "broad discretion to modify the definition of the class." *Warnick v. Dish Network*, 301 F.R.D 551, 560 (D. Colo. 2014).  Other districts within the Tenth Circuit have also recognized the district court's power to redefine classes *sua sponte* prior to the initial class certification. *Robinson v. Gillespie*,

219 F.R.D. 179, 185 (D. Kan. 2003); *Ditty v. Check Rite, LTD.*, 182 F.R.D. 635, 645 (D. Utah 1998).   Nevertheless, the court is not obligated to use this power.   *Warnick*, 301 F.R.D. at 561; *Robinson*, 219 F.R.D. at 185.

The Court has considered modifying the Class definition to restrict the Class to a set of individuals who more clearly share common questions of law or fact.   However, given the multitude of modifications that would be required, the Court has elected not to use this authority and will not revise the Class definition in order to salvage the Class.

**D.     Rule 23(b)(3)**

In order to certify the proposed Class, Plaintiffs must establish that their action matches one of the scenarios described in Rule 23(b).   Since the Court finds that Plaintiffs' proposed Class does not satisfy the requirements of Rule 23(a), the Court need not examine whether the proposed Class satisfies Rule 23(b)(3).

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Plaintiffs' Motion for Class Certification (ECF No. 54) is DENIED.

Dated this 30th day of December, 2015.

BY THE COURT:

_____

William J. Martínez
United States District Judge

17